UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TUNJI AINA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-3655 |
| | § | |
| UNITED PARCEL SERVICE, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.     Introduction

Pending before the Court is the defendant's, United Parcel Service, Inc., motion for summary judgment (Docket Entry No. 20).  The plaintiff, Tunji Aina, filed a response (Docket Entry No. 24), to which the defendant replied (Docket Entry No. 25).  After having carefully reviewed the motion, the responses, the record and the applicable law, the Court GRANTS the defendant's motion.

### II.    Factual Background

This case concerns a dispute over the international delivery of the plaintiff's personal items from Texas to Nigeria.  The plaintiff is a Nigerian citizen who worked for Hewlett-Packard ("HP") in Nigeria during all relevant times.  On October 23, 2009, he used HP's shipping account with the defendant to ship nine packages of baby-care products from the defendant's store in Houston, Texas to HP's office in Nigeria.  With HP's permission, he used its preprinted waybills.  At about the same time, Bukunmi Seweje, another HP employee, visited Texas and used HP's shipping account with the defendant to ship multiple packages of computer equipment to HP's Nigerian office.

The defendant's security personnel noted that several packages, including the plaintiff's and Seweje's packages, were addressed to the same Nigerian location. Each package bore HP's shipping account with the shipper field crossed out and a Texas address filled in by hand. The defendant opened those packages, then contacted HP's Global Security department to alert them of potentially fraudulent shipments under HP's account. The defendant suspended shipment of those packages, pending its investigation. HP launched an internal office investigation, and its Standard of Business Council cleared the plaintiff of misconduct in December 2009. On December 23, 2009, the defendant delivered the packages to the plaintiff, labeled with his name, work address and the words "Nigerian Fraud Intercept." He left his job approximately one month after the delivery of the packages and took a higher paying job. He did not submit a claim for loss or damage to any of the packages.

### III. Contentions of the Parties

#### A. The Plaintiff's Contentions

The plaintiff asserts claims of breach of contract and libel, and he seeks a variety of damages and a declaration that he is not indebted to the defendant for the contested shipping charges. He alleges that, due to the "Nigerian Fraud Intercept" label, he was ultimately forced to leave his job after being subjected to an internal office investigation that caused him a loss of esteem, odium and contempt. He also claims that, due to the defendant's delay in delivering the packages, he was forced to buy replacement baby-care products at a higher cost because his wife gave birth in October 2009. He asserts that the Warsaw Convention is inapplicable to his claims because the defendant did not provide the requisite notice of its limitation of liability. He asserts that the defendant breached the shipping contracts and that the "Nigerian Fraud Intercept" label

was a false statement published with constitutional actual malice or under circumstances of serious doubt as to its truth.

### B. The Defendant's Contentions[1]

The defendant argues that the plaintiff's claims are entirely preempted by the Warsaw Convention. It maintains that his claims also fail as a matter of law because he cannot establish the elements of his breach of contract or libel claims. It has filed a counterclaim seeking payment for the unpaid shipping charges.[2]

## IV. Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v.*

---

[1] The defendant previously filed a motion to dismiss, based partly on its argument that the plaintiff lacks standing because he is not a citizen or permanent resident of the United States (Docket Entry No. 3). The Court denied that motion without prejudice (Docket Entry No. 11).

[2] The parties dispute the amount of charges owed and whether any portion of those charges has been paid. Thus, the defendant has not moved for summary judgment on this issue.

*Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus,

"[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.     Analysis and Discussion

The Court grants the defendant's motion for summary judgment. The Warsaw Convention[3] entirely preempts the plaintiff's claims, and even if it did not, his claims still fail as a matter of law. Both the United States and Nigeria are signatories to the Warsaw Convention as amended by the Hague Protocol, and thus that treaty controls here.[4] The Warsaw Convention "applies to all international carriage of persons, baggage, or cargo performed by aircraft for reward." Art. 1(1). It creates a cause of action and is the exclusive remedy against international carriers for lost, delayed or damaged cargo. Arts. 18, 19, 24. "In the cases covered by Articles 18 [concerning loss of or damage to packages] and 19 [concerning delay of packages] any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention." Art. 24.

The Supreme Court has emphasized that "[t]he cardinal purpose of the Warsaw Convention is to achieve uniformity of rules governing claims arising from international air transportation." *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999). Within the Fifth Circuit:

> The essential inquiry is whether the Convention provides the exclusive liability remedy for international air carriers by providing an independent cause of action,

---

[3] The Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000 T.S. No. 876 (1934), as amended by the Protocol done at The Hague, September 28, 1955.

[4] The Montreal Protocol Number 4 ("MP-4"), further amended the Warsaw Convention on November 4, 2003. However, although the United States is a signatory to the MP-4, Nigeria is not. Thus, the Warsaw Convention, as amended by the Hague Protocol, governs this dispute.

> thereby preempting state law, or whether it merely limits the amount of recovery otherwise provided by state or federal law . . . We hold today that the Warsaw Convention creates the cause of action and is the exclusive remedy.

*Boehringer – Mannheim Diagnostics Inc. v. Pan American World Airways Inc.*, 737 F.2d 456, 458 (5th Cir. 1984). Furthermore, "[g]iven the Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations." *El Al Israel Airlines, Ltd.*, 525 U.S. at 169 (internal quotation omitted). The Warsaw Convention therefore preempts all state law and common law claims, including the plaintiff's breach of contract and libel claims.[5] Therefore, the Court grants the defendant's motion.

### A.   Breach of Contract

Even if the plaintiff's breach-of-contract claim was not preempted by the Warsaw Convention, it still fails as a matter of law. A breach-of-contract claimant must show: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App. – Houston [1st Dist.] 2008, pet. denied).

The plaintiff cannot establish the third element of his breach-of-contract claim because delayed delivery is not a breach of the contested shipping contracts. The contested contracts for

---

[5] Although the plaintiff asserts that he had inadequate notice of the Warsaw Convention's applicability, his cited cases apply to passenger tickets and death or personal injury, not waybills for the shipment of property. The Convention's notice provisions differ between those two subject matters. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 131 (1989) ("Just as Section I of [Chapter II of the Convention] . . . specifies what information must be included in passenger tickets, Sections II and III specify what information must be included in, respectively, baggage checks and air waybills for cargo.").

each package consist of the applicable waybills[6] and the UPS Tariff/Terms and Conditions of Service effective October 6, 2009 ("Tariff").  The Tariff provides that:

> UPS shall not be liable for any damages whatsoever for delayed delivery, except as specifically provided for shipments made under the UPS Service Guarantee [which is inapplicable here based on plaintiff's selected the method of shipping]. Under no circumstances shall UPS be liable for any special, incidental, or consequential damages, including, but not limited to, damages arising from delayed delivery or failure to attempt on-schedule delivery.

Furthermore, the defendant's Tariff specifically "reserves the right in its sole discretion to open and inspect any package tendered to it for transportation."

Here, the defendant had the right to group and investigate the plaintiff's packages with Seweje's packages, shipped at approximately the same time under HP's shipping account and bound for the same delivery address.  Therefore, the defendant's understandable delay in delivering the packages due to a potential fraud investigation does not constitute a breach of the contracts, and the Court grants the defendant's motion on this issue for this additional reason.

### B. Libel

Even if the plaintiff's libel claim was not preempted by the Warsaw Convention, it still fails as a matter of law.  "Libel" is defined as:

> a defamation expressed in a written or other graphic form that tends to . . . injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to punish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

Texas Civ. Prac. & Rem. Code § 73.001.  For a plaintiff who is not a public figure to prevail on a defamation claim, he "must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with . . . negligence . . . regarding the truth

---

[6] The waybills state that "[u]nless a greater value for carriage is declared on the Waybill, the limits of liability specified under the Warsaw, Montreal or CMR Conventions (if applicable) or set out in clause 9 of the Terms and Conditions will apply."

of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). The truth of the statement on which a libel action is based is a defense to the action. Texas Civ. Prac. & Rem Code § 73.005.

The plaintiff's claim fails because the alleged libelous statement, "Nigerian Fraud Intercept" beside the plaintiff's name, is true. The packages were indeed shipped by the plaintiff to Nigeria, and they were intercepted for a fraud investigation. Although the plaintiff was ultimately cleared of any fraud charges, the defendant was not negligent in placing the contested label on his packages. Further, HP was fully aware of the fraud interception and was in communication with the defendant throughout the investigation. Additionally, the plaintiff testified that he left HP for better employment that paid him twice as much, and he has offered insufficient evidence that his personal or professional reputation suffered in any way as a result of the alleged libel. Accordingly, the Court grants the defendant's summary judgment motion on this issue for this additional reason.[7]

## VI. Conclusion

Based on the foregoing discussion, the Court GRANTS the defendant's motion. It is so **ORDERED**.

SIGNED at Houston, Texas this 22nd day of September, 2011.

Kenneth M. Hoyt
United States District Judge

---

[7] In light of the fact that the Court has disposed of all of the plaintiff's claims, the only remaining cause of action is the defendant's counterclaim. The Court does not see how it can maintain jurisdiction over the defendant's counterclaim, as it is not a federal question under 28 U.S.C. § 1331, nor does the amount remaining in controversy meet the $75,000 threshold necessary under 28 U.S.C. § 1332. Thus, the Court invites the defendant to provide the Court with a concise notice of authorities showing how the Court may retain jurisdiction over its counterclaim. If the defendant does not respond within twenty days of the entry of this Memorandum Opinion and Order, the Court will dismiss its counterclaim.